IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Veronica Culbertson, | ) | C/A No.: 1:15-3556-JMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.    Relevant Background

    A.    Procedural History

On November 9, 2011, Plaintiff filed an application for DIB in which she alleged her disability began on August 1, 2009.[1] Tr. at 114–20. Her application was denied initially and upon reconsideration. Tr. at 102–05. On November 19, 2013, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Alice Jordan. Tr. at 28–43, 44–70 (Hr'g Tr.). The ALJ issued an unfavorable decision on February 28, 2014, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 9–27. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–7. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on September 4, 2015. [ECF No. 1].

    B.    Plaintiff's Background and Medical History

        1.    Background

Plaintiff was 48 years old at the time of the hearing. Tr. at 31. She completed high school. Tr. at 34. Her past relevant work ("PRW") was as a security guard, a receptionist, and a cashier. Tr. at 61. She alleges she has been unable to work since July 1, 2009. Tr. at 121.

---

[1] Plaintiff subsequently amended her application to indicate she became unable to work because of her disabling condition on July 1, 2009. Tr. at 121.

### 2. Medical History

Plaintiff presented to Michael T. Grier, M.D. ("Dr. Grier"), on December 29, 2006, for a consultation regarding neck and back pain. Tr. at 260–61. Dr. Grier indicated magnetic resonance imaging ("MRI") performed on October 20, 2006, showed a paracentral disc bulge at C5-6 that was mildly narrowing the right neural foramen, but not directly impinging on the nerve root. Tr. at 261. It showed small bulges at C4-5 that caused no neuroforaminal compromise and a reversal of the normal lordosis and mild degenerative disc space narrowing at C4-5 and C5-6. *Id.* Dr. Grier stated Plaintiff had cervical and lumbar spondylosis without radicular symptoms. *Id.* He prescribed Baclofen and a Lidocaine patch and discussed a possible trial for a spinal cord stimulator. *Id.* Dr. Grier subsequently administered right cervical median branch nerve blocks, trigger point injections to the right iliac posterior crest, and cervical epidural steroid injections. Tr. at 308–09, 313, 315, 320–21.

On November 13, 2007, Plaintiff reported headaches that woke her from sleep every two to three nights. Tr. at 323. Dr. Grier recommended changes to Plaintiff's medications. *Id.* On December 11, 2007, Plaintiff reported increased numbness in her bilateral upper extremities. Tr. at 325. After reviewing an updated MRI that showed no significant changes from the October 2006 findings, Dr. Grier indicated a neurosurgical reevaluation was unnecessary. Tr. at 327.

Plaintiff continued to report increased pain and numbness in her bilateral upper extremities on March 7, 2008. Tr. at 328. Dr. Grier indicated she was tearful at times and appeared depressed. *Id.* He recommended a nerve conduction study ("NCS") to look for

electrical evidence of nerve-root compromise. *Id.* On May 9, 2008, Dr. Grier indicated he did not receive a report of Plaintiff's NCS, but that she informed him that it showed carpal tunnel syndrome ("CTS") on the right, but no evidence of radiculopathy. Tr. at 330. From May 2008 through July 2009, Dr. Grier reported Plaintiff was receiving reasonable pain relief and was stable on her medications. Tr. at 330, 332, 333, 334, 335, 336.

Plaintiff presented to Dawne Hershberger, CFNP ("Ms. Hershberger"), on September 4, 2009. Tr. at 215. Ms. Hershberger noted tenderness in Plaintiff's head, neck, and lumbar spinous processes. Tr. at 216. She stated Plaintiff's movement was moderately restricted in all directions. *Id.* Plaintiff indicated the injections she had received at the pain clinic were not helpful and that she could not afford to continue her pain management treatment. *Id.* Ms. Hershberger refilled Plaintiff's prescription for Lortab and instructed her to return in three to four months. *Id.*

On December 31, 2009, Plaintiff complained of increased joint, neck, and back pain as a result of cooler temperatures. Tr. at 218. Ms. Hershberger observed tenderness in Plaintiff's head, neck, lumbar spinous processes, bilateral wrists, and bilateral hands. *Id.*

On April 28, 2010, Plaintiff reported increased stress and anxiety as a result of being unemployed and living with her husband's parents. Tr. at 220. She complained of numbness in her hands. Tr. at 221. Ms. Hershberger indicated Plaintiff's affect was sad and that she appeared anxious, apprehensive, and depressed. Tr. at 220. She observed tenderness in Plaintiff's cervical and lumbar spinous processes. *Id.* She increased

Plaintiff's Amitriptyline dosage from 10 to 25 milligrams and continued her prescriptions for Lortab, Robaxin, Tramadol, Neurontin, and Clonazepam. Tr. at 221.

Plaintiff complained of increased neck pain on June 14, 2010. Tr. at 222. Ms. Hershberger observed Plaintiff to be sad, anxious, apprehensive, tearful, and in moderate distress. *Id.* She noted tenderness and reduced flexion and extension in Plaintiff's cervical spinous processes. *Id.* She indicated the pain was making Plaintiff's anxiety worse. *Id.* She referred Plaintiff for a cervical x-ray that showed mild spondylosis at C5-6 and loss of the normal lordotic curve. Tr. at 223, 271.

On August 16, 2010, Plaintiff reported joint pain, muscle cramps, headaches, middle-of-the-night awakenings, and increased stress. Tr. at 217. Ms. Hershberger indicated Plaintiff's affect was sad; that she appeared anxious, apprehensive, and depressed; and that she cried off-and-on throughout the visit. *Id.* She observed Plaintiff to have tenderness in her cervical and lumbar spinous processes. *Id.* She indicated Plaintiff may benefit from an anti-inflammatory medication, prescribed Vicoprofen, and discontinued Lortab. Tr. at 225.

Plaintiff complained of joint pain, depressive symptoms, and increased nervousness on December 13, 2010. Tr. at 228. Ms. Hershberger described Plaintiff as having a sad and flat affect and appearing anxious, apprehensive, apathetic, and depressed. Tr. at 229. She indicated Plaintiff cried during the exam. *Id.* She noted tenderness in Plaintiff's cervical and lumbar spinous processes and bilateral upper and lower paraspinal muscles. Tr. at 228. She discontinued Plaintiff's prescription for

Robaxin, prescribed Soma and Nortriptyline, and continued Plaintiff's other medications. Tr. at 229–30.

On February 10, 2011, Plaintiff indicated her anxiety and pain had increased as a result of having to assist her elderly in-laws. Tr. at 231. She endorsed numbness in her upper extremities and problems with excessive sitting and standing. *Id.* She complained of difficulty performing household chores that required she bend or lift. *Id.* Ms. Hershberger observed Plaintiff to have tenderness in her cervical and lumbar spinous processes and bilateral upper paraspinal muscles. Tr. at 232. Plaintiff demonstrated reduced flexion and extension. *Id.* Ms. Hershberger indicated Plaintiff appeared anxious and apprehensive and was tearful during the examination. *Id.*

Plaintiff reported worsening back pain on April 22, 2011, and indicated she was unable to get out of bed on one recent morning. Tr. at 234. Ms. Hershberger noted Plaintiff's affect was flat and sad and that she was in mild mental distress. *Id.* She observed Plaintiff to demonstrate a slow gait and an irregular stride length and to have tenderness in her cervical and lumbar spinous processes, sacroiliac joint, and bilateral upper and lower paraspinal muscles. *Id.* She indicated Plaintiff's peripheral neuropathy was worsening and that her depression had increased as a result of her pain. Tr. at 235. She prescribed Lortab 10-500 milligrams and continued Plaintiff's other medications. *Id.*

On April 27, 2011, an MRI of Plaintiff's lumbar spine indicated degenerative disc space narrowing and disc desiccation at L2-3 and a left paracentral disc bulge at L3-4, but no significant neural foraminal compromise. Tr. at 391. An MRI of her cervical spine showed slightly increased cervical spondylosis, posterior osteophyte formation, varying

degrees of central canal stenosis, and neural foraminal impingement, but it indicated no large disc extrusion or migration. Tr. at 393.

On May 20, 2011, Plaintiff complained of deep neck pain and pressured, grinding back pain. Tr. at 236. She indicated her depression was worsened by family conflict and sleep disturbance. *Id.* She stated Nortriptyline had not improved her sleep or decreased her pain. *Id.* Ms. Hershberger observed tenderness in Plaintiff's cervical and lumbar spinous processes and noted she had difficulty rising from a seated position. *Id.* Plaintiff complained of increased pain in her hands. *Id.* Ms. Hershberger indicated Plaintiff appeared anxious and apprehensive. Tr. at 236–37. She discontinued Nortriptyline, prescribed 600 milligrams of Neurontin, and instructed Plaintiff to take one-half to one pill three times daily. Tr. at 237. She also prescribed Ambien for sleep. Tr. at 238.

Plaintiff reported increased symptoms of gastroesophageal reflux disease ("GERD") on September 12, 2011. Tr. at 239. Ms. Hershberger described Plaintiff as walking with a slow gait; having occipital groove tenderness and moderately-restricted movement in her neck; demonstrating tenderness in her cervical and lumbar spinous processes, bilateral lower paraspinal muscles, and sacroiliac joint; and showing reduced lateral motion bilaterally. *Id.* She noted Plaintiff's affect was flat and that she appeared to be apathetic. *Id.* Ms. Hershberger prescribed Dexilant for GERD and 800 milligrams of Motrin for pain. Tr. at 240. She continued Plaintiff's other medications. Tr. at 240–41.

On December 12, 2011, Ms. Hershberger noted that Plaintiff ambulated with a slow gait; was tender to palpation in her head, neck, cervical spinous processes, thoracic spinous processes, lumbar spinous processes, sacroiliac joint, bilateral hands, and the

dorsal areas of her feet; demonstrated severely reduced head and neck flexion and extension; and had moderately reduced lateral motion and bilateral rotation. Tr. at 242–43. She described Plaintiff as appearing apprehensive, anxious, and depressed. Tr. at 243. Ms. Hershberger stated she would attempt to refer Plaintiff to a pain management physician near her home because her pain was not completely controlled by her medications. *Id.* She prescribed 50 milligrams of Nortriptyline and continued Plaintiff's other medications. Tr. at 243–44.

Plaintiff presented to Bruce A. Kofoed, Ph. D. ("Dr. Kofoed"), for a psychological evaluation on January 18, 2012. Tr. at 250–53. She indicated she had experienced significant weight loss over the last couple of years without planning to do so. Tr. at 250. Dr. Kofoed noted that she appeared underweight. *Id.* Plaintiff reported a history of childhood sexual molestation and endorsed symptoms that included generalized anxiety and poor sleep. *Id.* Dr. Kofoed indicated Plaintiff functioned within the average range of intellectual ability; showed good social interaction skills; and demonstrated fair to good recall for verbal and nonverbal information. Tr. at 252. He diagnosed depressive disorder, not otherwise specified ("NOS"), and anxiety, NOS. *Id.* He indicated a need to rule out a diagnosis of post-traumatic stress disorder ("PTSD") because of Plaintiff's history of sexual abuse as a child and physical abuse during her second marriage. *Id.* He stated Plaintiff was capable of independently managing her funds. *Id.*

On January 19, 2012, state agency consultant Craig Horn, Ph. D. ("Dr. Horn"), reviewed the evidence and completed a psychiatric review technique form ("PRTF"). Tr. at 77–78. Dr. Horn considered Listings 12.04 for affective disorders and 12.06 for

8

anxiety-related disorders. Tr. at 77. He determined Plaintiff had no restriction of activities of daily living ("ADLs"); no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. *Id.* He considered Ms. Hershberger's opinion, Dr. Kofoed's evaluation report, and Plaintiff's ADLs and determined that Plaintiff's impairments did not significantly impact her functions or activities and were nonsevere. Tr. at 78.

State agency medical consultant Matthew Fox, M.D. ("Dr. Fox"), also reviewed the record on January 19, 2012, and assessed Plaintiff's physical residual functional capacity ("RFC"). Tr. at 79–82. Dr. Fox indicated Plaintiff could occasionally lift and/or carry 20 pounds; could frequently lift and/or carry 10 pounds; could stand and walk for about six hours in an eight-hour workday; could sit for about six hours in an eight-hour workday; could frequently climb ramps and stairs and balance; could occasionally climb ladders, ropes, and scaffolds; could never stoop; could frequently handle and finger; and should avoid even moderate exposure to hazards. *Id.*

Plaintiff reported increased anxiety and recent panic attacks on February 28, 2012. Tr. at 254. She endorsed joint pain, muscle pain, sleep disturbance, increased stress, depressive symptoms, and decreased energy. *Id.* She indicated she had recently visited a pain clinic, but was unable to pursue injections or physical therapy because her insurance would not cover either course of treatment. *Id.* Ms. Herberger observed tenderness in Plaintiff's head, neck, lumbar spinous processes, cervical spinous processes, sacroiliac joint, and the dorsal areas of her bilateral feet. Tr. at 255. She noted Plaintiff appeared

anxious, apprehensive, apathetic, flat, and depressed. *Id.* Ms. Hershberger prescribed Citalopram for anxiety. *Id.*

State agency medical consultant Robert H. Heilpern, M.D. ("Dr. Heilpern"), reviewed the evidence and completed a physical RFC assessment on June 8, 2012. Tr. at 94–96. He found that Plaintiff could occasionally lift and/or carry 20 pounds; could frequently lift and/or carry 10 pounds; could stand and/or walk for about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; could frequently climb ramps or stairs, balance, kneel, crouch, and crawl; could occasionally stoop; could never climb ladders, ropes, or scaffolds; and should avoid unprotected heights and hazards. *Id.*

On June 11, 2012, state agency consultant Robert Estock, M.D. ("Dr. Estock"), reviewed the record and completed a PRTF. Tr. at 92–93. Dr. Estock considered Listings 12.04 and 12.06, but found that Plaintiff had no restriction of ADLs; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. *Id.*

On August 14, 2012, Ms. Hershberger indicated Plaintiff made no complaint of pain. Tr. at 396. Plaintiff endorsed symptoms of depression and anxiety, and Ms. Hershberger noted she was crying during the visit. Tr. at 396, 397. Ms. Hershberger observed Plaintiff to walk with a slow gait; to have chronic inflammatory changes consistent with osteoarthritis; to have tenderness in her head, neck, lumbar spinous processes, thoracic spinous processes, cervical spinous processes, hands, and right

patella; and to have moderately restricted range of motion ("ROM") in all directions. Tr. at 397. She discontinued Clonazepam and prescribed Ativan and Citalopram. Tr. at 398.

On December 12, 2012, Plaintiff complained of arthralgia, joint and limb pain, anxiety, depression, and feeling tired. Tr. at 400. She indicated her symptoms were exacerbated by having to care for her elderly in-laws. Tr. at 402. Ms. Hershberger observed Plaintiff to have restricted musculoskeletal ROM and tenderness in her lumbosacral spine and bilateral wrists. Tr. at 401.

On January 25, 2013, Plaintiff complained to Ms. Hershberger of a gradual onset of severe right anterior knee pain. Tr. at 403. Ms. Hershberger described Plaintiff as having a flat affect and appearing anxious, depressed, and in pain. Tr. at 404. She observed Plaintiff to have tenderness and restricted ROM. *Id.*

Plaintiff presented to physical therapist Robert Keene ("Mr. Keene") for a functional capacity evaluation ("FCE") on June 18, 2013. Tr. at 437–42. Mr. Keene indicated Plaintiff could meet the physical demand characteristics for light work with a maximum ability to occasionally lift 15 pounds, but that she was limited to standing and walking for less than two hours in an eight-hour day. Tr. at 437. He stated the subjective and objective data showed Plaintiff to have demonstrated full and consistent effort on testing. *Id.*

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the hearing on November 19, 2013, Plaintiff testified that she lived with her husband and mother-in-law in her mother-in-law's house. Tr. at 32–33. She testified that her husband and mother-in-law paid the household bills and expenses. Tr. at 33. She indicated she had insurance coverage through her husband's health plan. Tr. at 34.

Plaintiff testified she last worked in July 2009. Tr. at 34. She stated she worked as a receptionist for American Security from 2002 until she was laid off in February 2009. Tr. at 35. She stated she subsequently worked two temporary jobs as a receptionist. Tr. at 37. She indicated she worked as a police officer for approximately six months from 2001 to 2002. Tr. at 37–38. She stated she worked for three years as a cashier at Rite-Aid. Tr. at 38.

Plaintiff testified that her lower back and neck pain prevented her from working. Tr. at 46. She stated she experienced a dull, constant pain in her lumbar spine. Tr. at 46–47. She indicated that moving her neck from side-to-side caused a sharp pain that radiated from the right side of her neck to her just above her shoulder. Tr. at 50–51. She stated her neck pain caused migraines approximately twice a month. Tr. at 51. Plaintiff testified she had been diagnosed with CTS and had experienced some numbness and tingling in her arms and hands. Tr. at 52, 54–55. She indicated she had been diagnosed with PTSD, depression, and anxiety, but stated her symptoms were controlled by medications. Tr. at 56–57. She denied having problems in public or around others. Tr. at

57. She indicated she was able to use her hands to grip and hold items, but had to take breaks between gripping. Tr. at 59.

Plaintiff testified that she could sit for 25 to 30 minutes. Tr. at 57. She indicated she could walk for 30 minutes at a time. Tr. at 58. She stated she could lift 15 to 20 pounds at most, but only five to 10 pounds on a repetitive basis. *Id.* She indicated she had difficulty bending down. *Id.* She denied problem with climbing stairs. *Id.*

Plaintiff testified she could no longer perform her PRW as a receptionist because holding the phone caused her to experience neck pain. Tr. at 42. She indicated she was unable to wear a headset for long periods because they hurt her ears after she wore them for a while. *Id.* She stated she could likely perform the job, but could not do so day after day because of her pain. Tr. at 59–60.

Plaintiff testified she cooked and did laundry. Tr. at 39. She stated she shopped and made beds with her husband's assistance. *Id.* She indicated she watched television off-and-on throughout the day, but needed to move every once in a while. Tr. at 40. Plaintiff stated she had difficulty reading because she could not put her head down for long periods. *Id.* She testified she drove her mother-in-law to the salon once a week. Tr. at 41. She indicated she walked her dog for exercise. *Id.* She stated she had insomnia and typically woke around 3:30 a.m. Tr. at 59.

b.    Vocational Expert Testimony

Vocational Expert ("VE") Vincent Hecker, Ph. D., reviewed the record and testified at the hearing. Tr. at 61–69. The VE categorized Plaintiff's PRW as a receptionist as light with a specific vocational preparation ("SVP") of three; a security

guard as light with an SVP of three; and a cashier as light with an SVP of three. Tr. at 61.

The ALJ described a hypothetical individual of Plaintiff's vocational profile who could

perform light work that required lifting, pushing, and pulling 15 pounds occasionally and

10 pounds frequently; sitting, standing, and walking for up to six hours each during an

eight-hour workday, with permitted changes of position; no climbing of ladders; frequent

climbing of stairs and balancing; occasional stooping, kneeling, crouching, crawling, and

overhead work; and avoidance of concentrated exposure to hazards. Tr. at 64–65. The VE

testified that the hypothetical individual could perform Plaintiff's PRW as a cashier and

receptionist. Tr. at 65. The ALJ asked the VE to further assume the individual would be

limited to frequent handling. *Id.* The VE indicated the individual could still perform

Plaintiff's PRW as a cashier and a receptionist. *Id.* The ALJ asked the VE to identify

other light, unskilled jobs in the regional or national economy that would accommodate

the limitations in the hypothetical question. Tr. at 66. The VE identified jobs as an

assembler, *Dictionary of Occupational Titles* ("*DOT*") number 706.684-022, with

218,000 positions nationally and 2,700 positions in South Carolina; a packer, *DOT*

number 753.687-038, with 660,000 positions nationally and 9,800 positions in South

Carolina; and a mail clerk, *DOT* number 209.687-026, with 119,000 positions nationally

and 1,400 positions in South Carolina. *Id.* The ALJ asked the VE to explain how he

accounted for the sit/stand option or need to change positions. *Id.* The VE responded that

the need to change positions would reduce the availability of the identified jobs by 40

percent. Tr. at 66–67.

Plaintiff's attorney asked the VE to consider a hypothetical individual of Plaintiff's vocational profile who could lift and carry 10 pounds frequently and occasionally, but no more than 15 pounds; could stand and walk for less than two hours in an eight-hour workday; could sit for three hours in an eight-hour workday; could sit for 45 minutes at a time before needing to change positions; would require the ability to shift from standing, walking, and sitting positions; could occasionally twist, stoop, crouch, and climb stairs; could never climb ladders; would be limited in her abilities to reach, handle, finger, push, and pull; and would be distracted by pain to an unspecified extent. Tr. at 67–68. The VE indicated that the specified limitations would preclude the individual from performing Plaintiff's PRW or any other work that existed in significant numbers in the economy. Tr. at 68.

### 2.     The ALJ's Findings

In her decision dated February 28, 2014, the ALJ made the following findings of fact and conclusions of law:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
2.     The claimant has not engaged in substantial gainful activity since July 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).
3.     The claimant has the following severe impairments: degenerative disk disease lumbar spine, spondylosis cervical spine (20 CFR 404.1520(c)).
4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb ramps or stairs and balance, and can occasionally stoop, kneel, crouch or crawl. However, she can never climb ladders, ropes or scaffolds and must

avoid concentrated exposure to work hazards such as dangerous machinery and unprotected heights. Despite this, she can perform occasional overhead reaching and frequent handling and should be able to change positions at will.

6.    The claimant is capable of performing past relevant work as a receptionist, semi-skilled mental demands, and light exertional level. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from July 1, 2009, through the date of this decision (20 CFR 404.1520(f)).

Tr. at 14–22.

## II.   Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ did not properly evaluate the opinions of Plaintiff's treating nurse practitioner and the physical therapist who performed the functional capacity evaluation;

2)    the ALJ erroneously classified Plaintiff's mental impairments as nonsevere and neglected to consider them in combination with her physical impairments in assessing her RFC; and

3)    the Appeals Council failed to consider new and material evidence.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

### A.   Legal Framework

#### 1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or are "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The

scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Opinion Evidence

Plaintiff argues the ALJ did not adequately evaluate the opinion evidence of record. [ECF No. 10 at 21–27]. The Commissioner maintains the ALJ appropriately weighed the opinion evidence. [ECF No. 11 at 5].

Medical opinions are statements from acceptable medical sources "that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." SSR 96-5p, quoting 20 C.F.R. § 404.1527(a). The Social Security Administration's ("SSA's") rulings and regulations classify the following as acceptable medical sources: licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a); SSR 06-03p. Medical and psychological providers who are not acceptable medical sources are considered "other sources" and include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. 20 C.F.R. § 404.1513(d).

The SSA's regulations require that ALJs carefully consider medical opinions. SSR 96-5p. Treating physicians' opinions that are well-supported by medically-acceptable clinical and laboratory diagnostic techniques and that are not inconsistent with the other substantial evidence of record are to be accorded controlling weight. 20 C.F.R. § 404.1527(c)(2). However, if the record contains no treating physician's opinion or if the treating physician's opinion is not entitled to controlling weight, the ALJ must evaluate

and weigh all the medical opinions of record based on the factors in 20 C.F.R. § 404.1527(c). *Id.*; SSRs 96-2p, 96-6p. These factors include (1) the examining relationship between the claimant and the medical provider; (2) the treatment relationship between the claimant and the medical provider, including the length of the treatment relationship and frequency of treatment and the nature and extent of the treatment relationship; (3) the supportability of the medical provider's opinion in his or her own treatment records; (4) the consistency of the medical opinion with other evidence in the record; and (5) the specialization of the medical provider offering the opinion. *Johnson*, 434 F.3d at 654; 20 C.F.R. § 404.1527(c).

ALJs are not required to explicitly consider the criteria in 20 C.F.R. § 404.1527(c) in evaluating the opinions of other medical sources who are not acceptable medical sources, but their decisions should indicate they were guided by these factors because they represent basic principles for the consideration of all opinion evidence. SSR 06-03p. "Thus, a distinction may be drawn between the ALJ's requirement to consider opinions from other sources and his need to explain in his decision the weight accorded to opinions from acceptable medical sources, but the ALJ 'generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.'" *Dutton v. Colvin*, No. 1:14-1779-BHH-SVH, 2015 WL 1733799, at *13 (D.S.C. Apr. 16, 2015), citing SSR 06-03p.

a.    Ms. Hershberger's Opinion

On December 16, 2011, Ms. Hershberger completed a form at the direction of the SSA. Tr. at 212. She indicated Plaintiff's mental diagnoses included depression and "post-traumatic distress." *Id.* She stated Plaintiff was prescribed Lexapro and Clonazepam for depression and anxiety. *Id.* She indicated psychiatric care had been recommended, but that Plaintiff "was unable to go." *Id.* She described Plaintiff as being oriented to time, person, place, and situation; having an intact, but racing thought process; having appropriate, but suspicious, obsessive, and paranoid thought content; having normal, but worried/anxious, flat, and depressed mood/affect; and having adequate attention/concentration and memory. *Id.* She assessed Plaintiff's work-related limitation in function to be obvious as a result of her mental condition. *Id.* However, she indicated Plaintiff was capable of managing her own funds. *Id.*

Plaintiff argues the ALJ did not properly weigh Ms. Hershberger's opinion. [ECF No. 10 at 21]. She submits that Ms. Hershberger assessed work-preclusive limitations that the ALJ failed to discuss in the decision. *Id.* at 22–23. She contends the court should not be swayed by the Commissioner's rationale for rejecting Ms. Hershberger's opinion in light of the fact that the ALJ's decision reflects no consideration of the opinion. [ECF No. 12 at 1–3].

The Commissioner argues that Ms. Hershberger was not an acceptable medical source. [ECF No. 11 at 7]. She maintains the ALJ implicitly considered Ms. Hershberger's opinion because she gave significant weight to the opinions of the state agency physician and psychologist who had considered the opinion and assessed

Plaintiff's mental impairments as nonsevere. *Id.* at 8–9. She contends that a remand to the ALJ for consideration of Ms. Hershberger's opinion would be futile because it would not change the ALJ's decision. *Id.* at 11.

ALJs must consider all relevant evidence, which includes opinions from other medical sources who do not qualify as acceptable medical sources under the regulations. *See* 20 C.F.R. §§ 404.1512(b)(1)(iii), (iv), 404.1527(b). The Commissioner concedes that the ALJ did not explicitly consider Ms. Hershberger's assessment of Plaintiff's mental functioning. *See* ECF No. 11 at 9. By failing to consider Ms. Hershberger's opinion, the ALJ neglected her duty to consider all relevant evidence.

As a nurse practitioner, Ms. Hershberger was not an acceptable medical source under the regulations, but she was Plaintiff's primary treating medical source. She examined Plaintiff on at least 15 occasions between her alleged onset date and the date of the hearing. *See* Tr. at 215–16, 217, 218, 220–21, 222–23, 228–30, 231–32, 234–35, 236–38, 239–41, 242–44, 254–55, 396–98, 400–02, 403–04. Ms. Hershberger's examination notes are consistent with her opinion in that she observed Plaintiff to have a flat affect; to be anxious, apprehensive, depressed, and apathetic; to be tearful during examinations; and to be in mild-to-moderate mental distress. *Compare* Tr. at 217, 220, 222, 229, 232, 234, 236–37, 239, 243, 255, and 404, *with* Tr. at 212. Ms. Hershberger's status as Plaintiff's treating medical provider, the treatment history, and the supportability of her opinion were relevant to the ALJ's assessment of Plaintiff's allegations. *See* SSR 06-03p; *see also* 20 C.F.R. § 404.1527(c).

While the Commissioner argues that the ALJ implicitly considered Ms. Hershberger's opinion because she weighed the opinions of the state agency consultants who had considered the opinion, the undersigned notes that the ALJ only recognized that the evidence contained "medical opinions regarding the claimant's physical functional capabilities" and solely cited Dr. Heilpern's opinion. Tr. at 17, 19. Although Dr. Horn referenced Ms. Hershberger's opinion, the ALJ did not indicate in the decision that she considered Dr. Horn's opinion. *Compare* Tr. at 18, *with* 77–78. Therefore, the Commissioner's argument lacks support in the record. In light of the foregoing, the undersigned recommend the court find the ALJ erred in failing to consider Ms. Hershberger's opinion and that such error was not harmless.

b.    Mr. Keene's Opinion

Based on the FCE conducted on June 18, 2013, Mr. Keene indicated Plaintiff was limited to lifting and carrying a maximum of 15 pounds; standing and walking for less than one hour without interruption and for less than two hours per day; sitting for about three hours per day; frequently balancing; occasionally stooping, crouching, reaching, handling, feeling, pushing, and pulling; and never climbing, kneeling, or crawling. Tr. at 437–42. Mr. Keene provided a supplemental statement on June 24, 2013, in which he indicated Plaintiff was limited to frequently and occasionally lifting and carrying 10 pounds; could sit for 45 minutes before changing positions; could stand for 45 minutes before changing positions; must walk around for five minutes during every 45-minute period; required the ability to shift at will from sitting or standing/walking; and could occasionally twist and climb stairs. Tr. at 443–46. He stated Plaintiff's impairments

would cause her to be absent from work less than once a month, but that her pain was present to such an extent as to distract her from adequate performance of daily activities or work. Tr. at 445. He indicated Plaintiff's pain was likely to increase greatly and to such a degree as to distract her or cause her to abandon tasks if she engaged in physical activities such as walking, standing, bending, stooping, and moving her extremities. *Id.*

Plaintiff argues the ALJ did not properly consider the work-preclusive limitations Mr. Keene assessed based on the FCE. [ECF No. 10 at 23]. She maintains the ALJ erroneously concluded that the limitations Mr. Keene indicated were consistent with the assessed RFC. *Id.* at 25–26. She contends the ALJ erred in failing to indicate the weight she gave to Mr. Keene's opinion. *Id.* at 26. She argues the ALJ should reject the Commissioner's rationale for discounting the opinion to the extent that it is inconsistent with the ALJ's explanation. [ECF No. 12 at 4].

The Commissioner maintains the ALJ considered Mr. Keene's opinion. [ECF No. 11 at 6]. However, she argues the FCE was obtained at the request of Plaintiff's attorney and was not the result of a physician's referral for testing. *Id.* She contends Mr. Keene rendered his opinion without having reviewed any medical records or diagnostic studies and based it exclusively on Plaintiff's self-reported symptoms. *Id.* She argues Mr. Keene was not an acceptable medical source, but was instead a one-time examiner who had no treatment relationship with Plaintiff. *Id.* at 7. She contends the ALJ accorded significant weight to Dr. Heilpern's opinion, which differed from that of Mr. Keene. *Id.* at 8.

The ALJ summarized Mr. Keene's opinion and indicated she considered it "with respect to severity and effect on function." Tr. at 18–19. She concluded Mr. Keene's report was consistent with the RFC she assessed. Tr. at 19.

Although the ALJ indicated the RFC she assessed was consistent with Mr. Keene's opinion, a comparison of the two reveals obvious inconsistencies. *Compare* Tr. at 16, *with* Tr. at 437–42, 443–46. The most obvious difference is that the ALJ found Plaintiff to be capable of performing light work over the course of an eight-hour workday, but Mr. Keene indicated Plaintiff was capable of standing and walking for less than two hours in an eight-hour workday and sitting for about three hours in an eight-hour workday. *See id.* Thus, Mr. Keene suggested Plaintiff was incapable of engaging in a combination of sitting, standing, and walking for more than five hours out of an eight-hour workday. Because it is impossible to discern from the ALJ's decision why she considered Mr. Keene's opinion to be consistent with the RFC she assessed or why she accepted some of the limitations he advanced and ignored others, she failed to provide a discussion of the evidence that allowed subsequent reviewers to follow her reasoning. *See* SSR 06-03p. Therefore, her consideration of Mr. Keene's opinion is not supported by substantial evidence. *Cf. Hughes v. Colvin*, No. 4:14-2046-RBH, 2015 WL 5437139, at *5 (D.S.C. Sept. 15, 2015) (holding the ALJ's RFC determination was not supported by substantial evidence because he misinterpreted the only relevant medical opinion as being consistent with the standing and walking abilities he assessed).

Although the Commissioner advances several valid reasons for discounting Mr. Keene's opinion, the undersigned notes that the ALJ did not suggest she was rejecting or

discounting the opinion and offered none of the reasons advanced by the Commissioner. "[T]he principles of agency law limit this Court's ability to affirm based on *post hoc* rationalizations by the Commissioner's lawyers." *Robinson ex rel. M. R. v. Comm'r of Soc. Sec.*, No. 0:07-3521-GRA, 2009 WL 708267, at *12 (D.S.C. 2009). "[R]egardless [of] whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for [his] decision and confine our review to the reasons supplied by the ALJ." *Id.*, citing *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

In light of the foregoing, the undersigned recommends the court find the ALJ failed to provide a reasoned explanation as to how she considered Mr. Keene's opinion in assessing the limitations imposed by Plaintiff's impairments.

2.    Severity of Mental Impairments and Combined Effect of Mental and Physical Impairments

Plaintiff argues the ALJ erred in assessing her mental impairments as nonsevere. [ECF No. 10 at 27]. She maintains that her general presentation and treating medical provider's opinion supported a finding that depression and anxiety were severe impairments. *Id.* at 27–28. She contends the ALJ failed to evaluate her mental functioning under the special technique for evaluating mental impairments. *Id.* at 28. She argues the ALJ neglected to consider the combined effect of her mental and physical impairments. *Id.* at 29–30.

The Commissioner maintains Ms. Hershberger's opinion was insufficient to establish the presence of a severe mental impairment. [ECF No. 11 at 12]. She contends

that Plaintiff's lack of formal mental health treatment and presentation during the consultative examination did not support a finding that she had a severe mental impairment. *Id.* at 12–13. She argues the evidence failed to show that anxiety and depression significantly limited Plaintiff's ability to perform basic work activities. *Id.* at 13.

A severe impairment "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see also* SSR 96-3p. A nonsevere impairment "must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, citing SSR 85-28; *see also* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities).[4]

The regulations require use of a special technique to evaluate the severity of mental impairments. 20 C.F.R. § 404.1520a(a). The ALJ must first evaluate the claimant's relevant symptoms, signs, and laboratory findings to determine whether she has a medically-determinable impairment. 20 C.F.R. § 404.1520a(b)(1). If the ALJ determines the claimant has a medically-determinable impairment, she must indicate the symptoms, signs, and laboratory findings that confirm the presence of the impairment. *Id.* The ALJ's decision must "show the significant history, including examination and

---

[4] Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment." 20 C.F.R. § 404.1520a(e)(4). She must "rate the degree of functional limitation resulting from the impairment(s)," based on consideration of clinical signs and laboratory findings, the effects of the claimant's symptoms, and factors affecting the claimant's mental functioning, and must assess the extent to which the claimant's impairment interferes with her abilities to function independently, appropriately, effectively, and on a sustained basis in the functional areas of ADLs; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(b)(2), (c)(1), (2), (3). The ALJ's decision "must include a specific finding as to the degree of limitation in each of the functional areas," rated as none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(e)(4); *see also* 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates the claimant's degree of limitation in the first three functional areas as "none" or "mild" and in the fourth as "none," the ALJ generally finds the claimant's mental impairment to be nonsevere, unless the evidence otherwise indicates the claimant has "more than minimal limitation" on her "ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

The ALJ's recognition of a single severe impairment at step two ensures that he will progress to step three. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Therefore, this court has found no reversible error where the ALJ erred in finding an impairment to be nonsevere at step two, but considered

that impairment in subsequent steps. *See Washington v. Astrue*, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (collecting cases); *Singleton v. Astrue*, No. 9:08-1982-CMC, 2009 WL 1942191, at *3 (D.S.C. July 2, 2009).

When a claimant has multiple impairments, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of all those impairments in determining the claimant's RFC and her disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated the importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments). The Commissioner must consider the combined effect of all of the individual's impairments "without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(b)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* This court subsequently specified that "the adequacy requirement of *Walker* is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments." *Brown v. Astrue*, C/A No. 0:10-CV-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012), *citing Green v. Chater*, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. 1995)).

The ALJ found that "[t]he claimant's medically determinable impairments of anxiety and depression, considered singly and in combination, do not cause more than

30

minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Tr. at 15. She determined Plaintiff had no limitation in ADLs, social functioning, or concentration, persistence, or pace. *Id.* She indicated she found no limitations in these three functional areas because "[n]either the medical record nor the claimant's statements or testimony support a limitation in this area." *Id.* Finally, she determined that Plaintiff had experienced no episodes of decompensation that had been of extended duration. *Id.* Thus, the ALJ concluded that Plaintiff's mental impairments were nonsevere because they caused "no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation." *Id.*

The ALJ subsequently included no mental limitations in the RFC assessment. *See* Tr. at 16. She explained that Plaintiff's treating physicians had noted "on a few office visits the claimant appeared depressed and/or anxious during the examination and prescribed medication to relieve those symptoms." Tr. at 19. However, she concluded that Plaintiff's presentation was not consistent with a "disabling" mental impairment because she "had not participated in formal mental health treatment." *Id.* She noted Plaintiff was able to do housework, cook, do laundry, walk her dog, shop independently, drive, and care for her elderly parents. *Id.*

The ALJ did not follow the steps of the special technique in assessing Plaintiff's mental impairments and limitations. 20 C.F.R. § 404.1520a. Although she found that anxiety and depression were among Plaintiff's medically-determinable impairments, her decision reflects no consideration of the relevant symptoms, aside from a brief reference to Plaintiff appearing depressed or anxious during a few doctors' visits. *See* Tr. at 15, 19;

*see also* 20 C.F.R. § 404.1520a(b)(1). As noted above, the record contained multiple observations from Ms. Hershberger regarding Plaintiff's presentation and mental status during office visits. *See* Tr. at 217, 220, 222, 229, 232, 234, 236–37, 239, 243, 255, 404. The ALJ did not document the history of Plaintiff's depression and anxiety or cite any specific evidence of record regarding the limiting effects of her symptoms. *See* Tr. at 15; *see also* 20 C.F.R. § 404.1520a(b)(2), (c)(1), (2), (3), (e)(4). While the ALJ rated Plaintiff as having no limitation in the three functional areas and no episodes of decompensation, she cited no specific evidence to support her findings. *See* Tr. at 15 (noting generally that "[n]either the medical record nor the claimant's statements or testimony support a limitation in this area"); *see also* 20 C.F.R. § 404.1520a(e)(4) ("The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)."). Because the ALJ's decision is devoid of specific findings regarding the functional effects of Plaintiff's depression and anxiety, the undersigned is constrained to find that she erred in assessing the severity of Plaintiff's mental impairments at step two.

If it were apparent from the decision as a whole that the ALJ considered Plaintiff's mental impairments in assessing her RFC, the ALJ's step two error would be harmless. *See Brown v. Astrue*, C/A No. 0:10-CV-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012). However, the ALJ assessed no mental limitations in her RFC finding. *See* Tr. at 16. Furthermore, her decision does not reflect adequate consideration of the combined effect of Plaintiff's mental and physical impairments on her ability to perform work-related functions. Although the ALJ gave substantial weight to Dr. Kofoed's

opinion and acknowledged that Plaintiff's physical impairments were likely to cause pain, she neglected to consider Dr. Kofoed's suggestion that Plaintiff's depression and anxiety were related to her pain, and she imposed no work-related limitations that pertained to Plaintiff's mental functioning. *See* Tr. at 16, 18. In light of the foregoing, the undersigned recommends the court find the ALJ did not adequately consider Plaintiff's depression and anxiety in determining her severe impairments and RFC.

        3.      Appeals Council's Failure to Weigh Evidence

On April 24, 2014, Plaintiff submitted to the Appeals Council a letter from Ms. Hershberger that stated the following:

> Ms[.] Culbertson is a patient of Family Medicine Associates in Abbeville. I have seen her numerous times over the last several years for her degenerative disc disease, neuropathy, headaches, arthritis, anxiety and depression. I have seen her problem progress to a debilitative state with significant pain making it unreasonable to think she would be able to engage in employment. Pt has had a Physical Capacities Evaluation done in 2013.

Tr. at 447.

Plaintiff argues the Appeals Council erred in failing to weigh Ms. Hershberger's letter as new and material evidence. [ECF No. 10 at 31]. She maintains that Ms. Hershberger's second statement is consistent with Mr. Keene's FCE findings and supported work-preclusive limitations. *Id.* at 32. She contends that remand is required "when there is a real likelihood that new evidence, submitted to the Appeals Council, might have affected the fact-finder's decision." [ECF No. 12 at 13].

The Commissioner argues the evidence submitted to the Appeals Council was not material evidence and did not render the ALJ's decision contrary to the weight of all the

evidence. [ECF No. 11 at 13–14]. She contends Ms. Hershberger's letter was "merely an unsupported statement offering an opinion on the ultimate issue of disability." *Id.* at 14. She maintains it was duplicative of the evidence already before the ALJ and failed to fill any gaps in the evidence. *Id.* at 14–15.

A claimant may submit additional evidence that was not before the ALJ at the time of the hearing, along with a request for review of the ALJ's decision. *Meyer v. Astrue,* 662 F.3d 700, 705 (4th Cir. 2011), citing 20 C.F.R. § 404.967. However, the evidence must be both "new" and "material," and the Appeals Council may only consider the additional evidence "where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer*, 662 F.3d at 705, citing *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

If new and material evidence is offered and it pertains to the period on or before the date of the ALJ's hearing decision, the Appeals Council should evaluate it as part of the entire record. 20 C.F.R. § 404.970(b). After reviewing the new and material evidence and all other evidence of record, the Appeals Council will either issue its own decision or remand the claim to the ALJ if it concludes that the ALJ's "action, findings, or conclusion" was "contrary to the weight of the evidence." *Meyer*, 662 F.3d at 705, citing 20 C.F.R. § 404.970(b). However, if after considering all the evidence, the Appeals Council decides that the ALJ's actions, findings, and conclusions were supported by the

weight of the evidence, the Appeals Council will deny review and is not obligated to explain its rationale. *Id.* at 705–06.

"In reviewing the Appeals Council's evaluation of new and material evidence, the touchstone of the Fourth Circuit's analysis has been whether the record, combined with the new evidence, 'provides an adequate explanation of [the Commissioner's] decision.'" *Turner v. Colvin*, No. 0:14-228-DCN, 2015 WL 751522, at *5 (D.S.C. Feb. 23, 2015), citing *Meyer*, 662 F.3d at 707 (quoting *DeLoatche v. Heckler*, 715 F.3d 148, 150 (4th Cir. 1983)). After reviewing new evidence submitted to the Appeals Council, the court should affirm the ALJ's decision to deny benefits where "substantial evidence support[ed] the ALJ's findings." *Id.*, citing *Smith v. Chater*, 99 F.3d 635, 638–39 (4th Cir. 1996). However, if a review of the record as a whole shows the new evidence supported Plaintiff's claim and was not refuted by other evidence of record, the court should reverse the ALJ's decision and find it to be unsupported by substantial evidence. *Id.*, citing *Wilkins*, 953 F.3d at 96. If the addition of the new evidence to the record does not allow the court to determine whether substantial evidence supported the ALJ's denial of benefits, the court should remand the case for further fact finding. *Id.*

Here, the Appeals Council considered Ms. Hershberger's letter to be new and material evidence, but concluded that "the additional evidence does not provide a basis for changing the Administrative Law Judge's decision." Tr. at 2, 5. Because the Appeals Council recognized the opinion was new and material evidence, it is only necessary for the court to assess whether substantial evidence supported the ALJ's decision when

considered in light of the new evidence. *See Turner*, 2015 WL 751522, at *5; *Smith*, 99 F.3d at 638–39; *Wilkins*, 953 F.3d at 96.

The Commissioner correctly asserts that Ms. Hershberger's letter provided an opinion on the ultimate issue of disability, which was entitled to no particular significance under the regulations. *See* 20 C.F.R. § 404.1527(d). Nevertheless, the regulations require that ALJs consider opinions on issues reserved to the Commissioner. *See* SSR 96-5p (stating "our rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner"). Although Ms. Hershberger's opinion was not entitled to any particular significance, it was among the relevant evidence that was required to be considered.

Ms. Hershberger's April 2014 letter is particularly pertinent in that it speaks to the effect of Plaintiff's pain on her ability to work. *See* Tr. at 447. Although Ms. Hershberger submitted an earlier opinion, that opinion pertained to Plaintiff's depression and anxiety and did not address the effect of pain from her physical impairments. *Compare* Tr. at 212, *with* Tr. at 447. While Ms. Hershberger did not specifically adopt the restrictions identified by Mr. Keene in the FCE, she acknowledged that Plaintiff had undergone the FCE and substantiated Mr. Keene's indications that her functional abilities were reduced by pain. *See* Tr. at 447. For the foregoing reasons, Ms. Hershberger's April 2014 letter was pertinent to the ALJ's conclusions regarding the effect of Plaintiff's pain and her consideration of the limitations identified by Mr. Keene.

In light of Ms. Hershberger's April 2014 letter and in consideration of the ALJ's other errors, it is impossible for the court to determine whether the ALJ's decision is supported by substantial evidence. Therefore, the undersigned recommends the court remand the case for consideration of Ms. Hershberger's April 2014 letter.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

May 13, 2016                                    Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).